[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter originated as a paternity action commenced pursuant to General Statutes § 46b-162 by the Department of Social Services on behalf of the plaintiff mother for a minor child Kareem White, born February 23, 1999. Both parties appeared and the defendant moved for DNA tests. The motion was granted. The case was continued for trial to October 26, 1999. Because the DNA results were not completed the matter was continued to December 7, 1999. Ultimately the laboratory report indicated a combined paternity index of 8,790 to 1 or a probability of 99.99% that the defendant is Kareem's father. The court entered judgment accordingly and continued the matter for financial orders[1].
The defendant was minimally employed and was in the process of retraining as a truck driver. The matter was further continued several times to allow completion of his training. On May 2, 2000 evidence was submitted that the defendant had completed his training program in April. Although the defendant reported actual income of only $50.00 per week, the court ruled that he had an earning capacity of at least $11 per hour. The court granted an upward deviation based on that earning capacity and ordered the defendant to pay $85.00 per week support plus $5.00 per week on arrearages.
Just a few weeks later, the defendant filed a motion seeking a downward modification. He claimed a decrease in his income. He also claimed that "my son is no longer living with the plaintiff (his mother), my son is in the care of the plaintiff's mother (grandmother) residing in Atlanta, CT Page 9766 Georgia. That is the person who should receive payments."
Notwithstanding the defendant's claim, both parties appeared in court on October 13, 2000 and presented to the court a signed agreement requesting essentially that the court terminate the support order and allow the defendant to meet his support obligation "without the assistance of the court." The court refused to approve this agreement and on its own motion appointed Attorney Sean Crowshaw as guardian ad litem and attorney for the minor child.
Attorney Crowshaw's investigation revealed that the defendant had been correct in his previous motion when he alleged that the child was residing in Atlanta, Georgia, with his grandmother. Moreover, Attorney Crowshaw determined that the grandmother had legal guardianship of Kareem which predated the support judgment of this court. On behalf of the minor child, he not only opposed the agreement proffered by the parents, but also filed a motion to reopen the judgment. He seeks to implead the grandmother and requests a support order and arrearages against both parents payable to the grandmother. This court granted the motion on January 26, 2001 and the judgment was opened accordingly[2] . Additional evidence was taken as to the ability to pay of the parents, and the court now enters judgment in this matter.
Based on the testimony of the parties, the evidence and court record including the DNA results, the court enters judgment that the defendant Keith Armstrong is the father of the minor child Kareem White born February 23, 1999 to the plaintiff mother Nicole White. He stands charged with the maintenance and support of the said child with the assistance of the mother.
The guardian ad litem has submitted a certified copy of a decree of the Probate Court for Gwinnett County, Georgia, granting temporary guardianship of Kareem White to Brenda Johnson on March 7, 2000. Attorney Crowshaw's investigation reveals that the Georgia court had reason to consider Georgia the child's home state at the time and had jurisdiction to render its decree. This court takes judicial notice of that decree and will afford full faith and credit to that order. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738A; General Statutes § 46b-103 (recognition section of the Uniform Child Custody Jurisdiction Act[3] ).
Additionally, pursuant to this court's order, the plaintiff mother filed an affidavit concerning children, form JD-FM-164 in January of this year. The statements in the affidavit claim that the plaintiff and Kareem both lived with the intervenor Brenda Johnson in Bloomfield until January, 2000. She concedes that thereafter the child lived exclusively CT Page 9767 with his grandmother in Georgia. The intervening grandmother's claim on support dates from March 7, 2000, the date that the Georgia decree established her as Kareem's legal guardian. Prior to that date the court will treat the plaintiff as the custodial parent.
The guardian ad litem's motion seeks support and arrearages from both parents. Since they are both deemed non-custodial parents since at least March 7, 2000, this is appropriate. The defendant does not claim to have been the custodial parent at any time, thus his liability extends back to the birth of the child.
The several hearings in this case produced different evidence of the ability to pay of the parents. Mr. Armstrong reports himself out of work at various times, including his last filed financial affidavit in February 2001, although he notes an expected return to work in April. The court initially found an earning capacity of $11 per hour based on his completion of certification as a class A truck driver. At another hearing the court found a $15 per hour earning capacity. He also claims to have two other children.
On December 15, 2000 both parents completed full financial affidavits. The court finds this the best evidence of their incomes or earning capacities for purposes of computing child support. The plaintiff mother, Nicole White, had income of $400.00 per week gross with a net of $369.00 per week. The defendant father has a weekly gross income of $750.00 per week with a net of $478.00[4] . The child support guidelines suggest that the mother pay $83.00 per week in current support while the father pay $107.00 per week. The court finds no reason to deviate from the guidelines computation and enters those figures as support orders, effective July 20, 2001. A copy of the court's guideline worksheet is appended.
Computing arrearages is a bit complicated under the circumstances. The court finds the previous deviation based on earning capacity of $11 per hour to continue to be appropriate to measure the defendant's ability to pay thus $85.00 per week, until he completed his training program in April 2000. The first period of time runs from Kareem's birth through April 19, 1999. This would produce charges of $680.00 running from the defendant to the plaintiff for this time period. The child was on temporary family assistance (TFA) from April 20, 1999 through January 31, 2000, a period of 40 weeks. Thus the defendant is charged $3,400.00 to the State of Connecticut for that period. An additional charge is due from the defendant to the mother from February 1, 2000 through March 6, 2000, five weeks totaling $425.00. Thus the total of charges due from the defendant to the plaintiff are $1,105.00. At the hearing it was reported that the defendant had paid $1,220.00 pursuant to the prior order and had CT Page 9768 made direct payments to the plaintiff of $230.00. Thus he is entitled to credits of $1,450.00 plus any payments made subsequently which went to the plaintiff.
Beginning on March 7, 2000 the support payments accrue to the intervenor grandmother. The defendant is charged 8 weeks at $85 or a total of $680 plus 62 weeks at the $107 rate or $6,634.00 accruing to Ms. Johnson. He is of course entitled to credit for any payments made while the matter was pending. The plaintiff is responsible for 70 weeks at $83 weeks based on the guidelines. This totals $5,810.00 due from her to Ms. Johnson. Once again, she is entitled to credits for any provable payments made during the pendency of this matter.
The support enforcement division is directed to compute the arrearages based on the foregoing. If the computations reveal, as it appears likely, that the defendant has a credit balance as to the plaintiff mother, the support enforcement division is directed to adjust this by reducing the defendant's arrearage to the grandmother by the amount of the credit balance and increasing the plaintiff's arrearage to the grandmother by the same amount. Each parent is directed to pay an additional $5.00 per week on their arrearage. The court orders immediate income withholding as to each parent. Payments are to be made as directed by the support enforcement division.
The child support guidelines require the court to provide an order for medical and dental insurance coverage. Regs., Conn. State Agencies, § 46b-215a-2a(g)(1). Accordingly, each parent is ordered to provide medical and dental insurance for the benefit of the minor child as available at reasonable cost on a group basis through an employer or union. The provisions of General Statutes § 46b-84(e) are incorporated, and each parent is ordered to provide the intervening grandmother and the State verification of such insurance on or before August 31, 2001 and thereafter within 30 days of a reasonable request. The intervening grandmother is ordered to certify this order to any disclosed insurance carrier as provided by the statute.
The child support guidelines also require this court to order payment of the children's "medical and dental expenses that are not covered by insurance or reimbursed in any other manner." Regs., Conn. State Agencies, § 46b-215a-2a(g)(3). The guidelines call for recomputation of the parties' respective net incomes by adjusting the same for the amount of the support order, arriving at an adjusted "net disposable income". The computation is shown on part III of the guidelines work sheet. Accordingly, the defendant father is ordered to pay 43.8% and the plaintiff mother 56.2% of any unreimbursed or uninsured medical or dental costs. The $100 annual exemption provided for in the guidelines is CT Page 9769 deleted because the intervenor grandmother should not be obligated for any direct elements of the child support order. Favrow v. Vargas,231 Conn. 1, 21, 647 A.2d 731 (1994). Judgment is entered accordingly. The defendant is ordered to pay the cost of the DNA test as provided by statute. The remaining costs including the fee of the guardian ad litem are to be paid 75% by the plaintiff and 25% by the defendant. The guardian ad litem may submit its bill as usual for payment by the State. The State thereafter is directed to file a bill of costs as to each parent (with copies to each party) accordance with the foregoing. Each parent is to pay his or her portion to the State within sixty days of the filing of the bill of costs. The State may at its discretion apply the periodic arrearage payment to reimburse itself its costs.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate
 STATE OF CONNECTICUT COMMISSION FOR CHILD SUPPORT GUIDELINES WORKSHEET for the Connecticut Child Support and Arrearage Guidelines Mother Father Custodian Nicole White Keith Armstrong MOTHER FATHER
OTHER CUSTODIAN Brenda Johnson
 Court Hartford Superior Court D.N. Case No. Number of children 1 FA99-0629099
Name of Child Date of Birth Name of Child Date of Birth
I. NET INCOME (Weekly amounts) Nicole White Keith Armstrong
 1. Gross income (attach verification) $400 $750 2. Federal income tax (allowable exemptions, deductions credits (9) 38 2a. Eliminate refundable earned income credit on line 2 9 0 3. State and local income tax (allowable exempt, deductions, cr) 0 6 4. Social Security tax 25 47 4a. Mandatory retirement 0 0 5. Medicare tax 6 11 6. Health insurance premiums (other than child) 0 48 7. Mandatory union dues or fees 0 0 8. Non-arrearage payments — court ordered alimony child support 0 0 9. Imputed support obligation for qualified child 0 122 (Current spt all children/total CT Page 9771 children X #qualified children) 10. Sum of lines 2-9 $ 31 $272 11. Net Income (line 1 minus line 10) $369 $478
 II. CURRENT SUPPORT
 12. Combined net weekly income (rounded to nearest $10) $850
13. Basic child support obligation (from schedule) $190
14. Check here if noncustodial parent is a low-income obligor 15. Child's health insurance premium $ 0 $ 0 16. Total current spt obligation (line $190 13 minus noncustodial parent's line 15 amount if line 14 is checked-line 13 + line 15 total for all other cases) 17. Each parent's share of line 12 (If 43.76% 56.24% line 14 is checked, skip this line and line 19, and enter the line 16 amount in the noncustodial parent's column on line 18) 18. Each parent's share of the total $ 83 $107 current support obligation (line 17 times line 16 for each parent) 19. Health insurance premium adjustment $ 0 20. Social Security dependency benefits adjustment $ 0 21. Sum of lines 19 and 20 (for each parent) $ 0 22. Presumptive current support amounts $107 23. Recommended current support order (Noncustodial parent only. $107
If different from line 22 amount, explain on line 47)
 III. UNREIMBURSED MEDICAL EXPENSE $ 0 $ 0
 24. Net disposable income (line 11 plus $476 $371
line 23 for custodial parent; 11 minus line 23 for noncustodial) 25. Each parent's share of combined net 56.20% 43.80% disposable income (each parent's line 24 divided by sum of line 24 amounts) CT Page 9772
 IV. CHILD CARE CONTRIBUTION
 26. Qualifying costs (enter contribution amount on line 43) $ 0 $ 0
 V. ARREARAGE
 27. Delinquencies on current support orders $0 28. Unpaid court-ordered arrearages 0 29. Support due for periods prior to support action (not court-ordered 0 30. Total arrearages $0
 VI. ARREARAGE PAYMENT
 31. Current support order from line 23 (or $0 imputed support obligation if there is no current support order or child is living with the obligor) 32. 20% of line 31 $0 — (If line 14 is checked, skip line 32 and go to line 37) — (if the child for whom the arrearage is owed is deceased, emancipated, or over 18, skip line 32 and go to line 39) — (if the child is living with the obligor, skip lines 33-39 and: (1) If the obilgor's gross income is not more than 250% of poverty level enter $1 on line 40; OR (2) if the obligor's gross income is greater than 250% of poverty level, enter line 32 amount on line 40) 33. Obligor's line 11 amount $0 34. 55% of line 33 0 35. Line 34 minus line 31 0 36. Lesser of line 32 or line 35 (Enter here 0 and on line 40 and skip lines 37-39) 37. 10% of line 31 0 38. Greater of line 37 or $1 (Enter here and on line 40) 0 39. 50% of line 31 (Enter here and on line 40) 0 40. Recommended arrearage payment $0 (If different from line 45, explain on line 47)
CT Page 9773
VII. ORDER SUMMARY
 41. Current support order $107 42. Unreimbursed medical expense order $0 43. Child care contribution $0
To State To Family
 44. Total arrearage $ 0 $ 0 45. Arrearage payment order $ 0 $ 0 46. Total child support award: $107
 VIII. DEVIATION CRITERIA
 47. Reasons for deviation from presumptive support amounts and/or arrearage guideline:
 Prepared by Title of Preparer Date Prepared Harris T. Lifshitz Family Support Magistrate July 12, 2001